David M. Tall
Oseran Hahn Spring Straight & Watts, P.S.
10900 NE Fourth Street #850
Bellevue WA 98009
425-455-3900

The Honorable Samuel J. Steiner
Chapter 13
Hearing Date: January 19, 2011
Hearing Time: 9:30 a.m.
Hearing Place: Seattle
Response Date: January 12, 2011

**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON, AT SEATTLE**

In re,

Rebekah L. Green,

                Debtor(s).

No. 10-21777

**NOTICE OF AND MOTION FOR RELIEF FROM STAY BY BOKARA BY THE LAKE OWNERS ASSOCIATION**

PLEASE TAKE NOTICE THAT Bokara By the Lake Owners Association, a secured creditor, will bring before the above Court, at 700 Stewart Street, Seattle WA 98101, at the above time, a motion for relief from the automatic stay pursuant to 11 U.S.C. § 362 regarding subject property commonly known as 801 Rainier Avenue N., #G137, Renton, WA 98055, and legally described as:

> LOT 137, BUILDING G, BOKARA BY THE LAKE, A CONDOMINIUM, SURVEY MAP AND PLANS RECORDED IN VOLUME 201 OF CONDOMINIUMS, PAGES 39 THROUGH 52, AND ANY AMENDMENTS THERETO; CONDOMINIUM DECLARATION RECORDED UNDER RECORDING NUMBER 20041109000479, AND ANY AMENDMENTS THERETO, IN KING COUNTY WASHINGTON.

THE HEARING IS SET AS FOLLOWS:

NOTICE OF AND MOTION FOR RELIEF FROM STAY-1
F:\DMT\Condo\Merge Forms\Bankruptcy\MRS Motion.doc 12/6/10
(m) #

OSERAN HAHN SPRING STRAIGHT & WATTS P.S.
10900 NE Fourth Street #850
Bellevue WA 98004
Phone: (425) 455-3900
Facsimile: (425) 455-9201

Judge: Samuel J. Steiner    Time: 9:30 a.m.
Place: Seattle    Date: January 19, 2011

IF NO RESPONSE IS TIMELY FILED AND SERVED, the Court may, in its discretion, GRANT THE MOTION PRIOR TO THE HEARING, WITHOUT FURTHER NOTICE, and strike the hearing.

## 1. INTRODUCTION

COMES NOW, Bokara By the Lake Owners Association, its agents, successors in interest, assignors or assignees ("Creditor") and moves this court for an order terminating the automatic stay and allowing Creditor to proceed with and complete any and all contractual and statutory remedies incident to its security interests held in real property commonly described as 801 Rainier Avenue N., #G137, Renton, WA 98055, and legally described as set forth as follows:

> LOT 137, BUILDING G, BOKARA BY THE LAKE, A CONDOMINIUM, SURVEY MAP AND PLANS RECORDED IN VOLUME 201 OF CONDOMINIUMS, PAGES 39 THROUGH 52, AND ANY AMENDMENTS THERETO; CONDOMINIUM DECLARATION RECORDED UNDER RECORDING NUMBER 20041109000479, AND ANY AMENDMENTS THERETO, IN KING COUNTY WASHINGTON.

including, but not limited to foreclosure. Creditor further requests that absent objection, and to avoid further deterioration of Creditor's secured position, the order be effective immediately and notwithstanding the provisions of FRBP 4001(a)(3).

## 2. PARTIES IN INTEREST

On or about September 30, 2010, Rebekah L. Green ("Debtor" herein), filed the petition and listed Bokara By the Lake Owners Association as a secured creditor on Schedule D, but did not list the delinquent amount due to Bokara By the Lake Owners Association. On belief, debtor has not abandoned the subject property and resides at the unit.

NOTICE OF AND MOTION FOR RELIEF FROM STAY-2
F:\DMT\Condo\Merge Forms\Bankruptcy\MRS Motion.doc 12/6/10
(m) #

OSERAN HAHN SPRING STRAIGHT & WATTS P.S.
10900 NE Fourth Street #850
Bellevue WA 98004
Phone: (425) 455-3900
Facsimile: (425) 455-9201

The indebtedness is secured by lien recorded in the office of the King County Recorder on March 16, 2009 under King County Recording number 20090316000337. A true and correct copy of this lien is attached as **Exhibit A** and incorporated by this reference.

Creditor is the current holder of the lien. A Complaint to Foreclose Lien for Condominium Assessments was filed in the King County Superior Court on July 15, 2009 under King County Cause #09-2-26600-0 KNT, naming Debtor, Rebekah L. Green as one of the defendants.

Debtor filed for protection under Chapter 13 on September 30, 2010, just 6 months after obtaining a discharge from a Chapter 7 filed on November 20, 2009 under Cause No. 09-22198 (discharged on March 25, 2010).

### 3. ESTIMATE OF OBLIGATION

As of September 30, 2010, the amount due Creditor was $5,250.59. The total due to date is $5,700.59 (not including the costs and fees associated with this motion) as set forth on the ledger attached as **Exhibit B** and by this reference incorporated herein.

This total is an approximation of the total amounts due and is provided only for the purposes of this motion. This figure cannot be relied upon for any other purpose including tender of payoff and specifically excludes charges or fees accrued after the above date. An exact payoff figure can be obtained from Creditor through counsel upon written request to counsel for Creditor.

### 4. VALUE OF THE PROPERTY

Based upon records currently available to Creditor, the stated value of the Property is $110,000.00 as indicated on debtor's Petition. Such property is encumbered with mortgages in the amount of $140,000 (current due is alleged to be $138,000 according to the Schedules) and $35,000 (current due is alleged to be approximately $28,541 according to the Schedules),

NOTICE OF AND MOTION FOR RELIEF FROM STAY-3
F:\DMT\Condo\Merge Forms\Bankruptcy\MRS Motion.doc 12/6/10
(m) #

OSERAN HAHN SPRING STRAIGHT & WATTS P.S.
10900 NE Fourth Street #850
Bellevue WA 98004
Phone: (425) 455-3900
Facsimile: (425) 455-9201

respectively with interest accruing thereon and approximately $5,700.59 (not including the costs and fees associated with this motion) for condominium assessments due post-petition to Bokara By the Lake Owners Association.

## 5. CONTRACTUAL DEFAULT

Debtor is in default pursuant to the terms of the Condominium Declaration for failure to make payments as prescribed. Payments are credited as last received to first due.

## 6. POST-PETITION DEFAULT

Since September 30, 2010, the Debtor has accumulated post-petition defaults as set forth on the ledger attached as **Exhibit B**.

This figure does not include payments received after the above date or payments that have come due after that date. This figure also does not include charges that have accrued since the above date. An exact post-petition reinstatement figure can be obtained through counsel for the Creditor.

## 7. AUTHORITY

Under 11 U.S.C. § 362 (d)(1), on request of a party in interest, the Court shall terminate, annul, modify or condition the stay for cause.

Under 11 U.S.C. § 362 (d)(1), cause includes the lack of adequate protection of an interest in the subject property. Adequate protection is lacking in cases where there is an insufficient "equity cushion" in the subject property. *In re McKillips*, 81 Bankr. 454, 458 (Bankr. N.D. Ill. 1987). An equity cushion is the amount of value in property that exceeds the amount owed on the property such that a secured creditor will not be subject to a loss in the event of a decrease in value while the property is encumbered by the automatic stay. *In re Mellor*, 734 F.2d 1296, 1400 fn. 2 (9th Cir. 1984). In determining the amount of value in property, the likely costs of sale or liquidation must be considered. *In re Faires*, 34 Bankr.

NOTICE OF AND MOTION FOR RELIEF FROM STAY-4
F:\DMT\Condo\Merge Forms\Bankruptcy\MRS Motion.doc 12/6/10
(m) #

OSERAN HAHN SPRING STRAIGHT & WATTS P.S.
10900 NE Fourth Street #850
Bellevue WA 98004
Phone: (425) 455-3900
Facsimile: (425) 455-9201

549, 550 (Bankr. W.D. Wash. 1983). In the case at bar, considering the assessed value, Creditor's total lien, and the likely costs of liquidation, there is an insufficient equity cushion and thus Creditor lacks adequate protection.

## 8. CONCLUSION

THEREFORE, Creditor requests this Court enter an order terminating the automatic stay and allowing Creditor to proceed with and complete its foreclosure remedy incident to its security interest held in real property commonly described as 801 Rainier Avenue N., #G137, Renton, WA 98055, and legally described as set forth in Section 1 above.

## DECLARATION IN SUPPORT OF MOTION

David M. Tall declares as follows:

1. I am the attorney for Bokara By the Lake Owners Association, not a party to the above captioned action, and am competent to be a witness.

2. **Exhibit A** is a true and correct copy of the recorded lien filed by Creditor.

3. **Exhibit B** is true and correct ledger of the debt owed by Creditor.

4. **Exhibit C** is a true and correct copy of §15 of the Covenants, Conditions, Restrictions and Regulations of Bokara By the Lake Owners Association.

I DECLARE UNDER THE PENALTY OF PERJURY OF THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING STATEMENT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

NOTICE OF AND MOTION FOR RELIEF FROM STAY-5
F:\DMT\Condo\Merge Forms\Bankruptcy\MRS Motion.doc 12/13/10
(m) #

OSERAN HAHN SPRING STRAIGHT & WATTS P.S.
10900 NE Fourth Street #850
Bellevue WA 98004
Phone: (425) 455-3900
Facsimile: (425) 455-9201

DATED this ___9___ day of December, 2010 at Bellevue, Washington.

<u>/s/ David M. Tall</u>
DAVID M. TALL

## CERTIFICATE OF SERVICE

I, Melinda Nordby, certify that I am not less than 18 years of age and not a party to the matter concerning the service made. I further certify that the service of the foregoing document was made by ECF (electronic filing) any by mailing a copy via US Mail, postage prepaid to the following:

Rebekah L. Green
801 Rainier Avenue N., #G137
Renton, WA 98055

on <u>December 13, 2010</u> in Bellevue, Washington.

Under penalty of perjury, I declare that the foregoing is true and correct.

/s/ Melinda Nordby
Melinda Nordby

NOTICE OF AND MOTION FOR RELIEF FROM STAY-6
F:\DMT\Condo\Merge Forms\Bankruptcy\MRS Motion.doc 12/6/10
(m) #

OSERAN HAHN SPRING STRAIGHT & WATTS P.S.
10900 NE Fourth Street #850
Bellevue WA 98004
Phone: (425) 455-3900
Facsimile: (425) 455-9201

Return Address:
DAVID M. TALL
OSERAN, HAHN, SPRING, STRAIGHT &
10900 NE FOURTH STREET #850
BELLEVUE WA 98004



2009 0316000337
OSERAN HAHN   L         43.00
PAGE001 OF 002
03/16/2009 10:05
KING COUNTY, WA

## KING COUNTY AUDITOR/RECORDER'S INDEXING FORM

| DOCUMENT TITLE(S): |
| --- |
| 1. NOTICE OF CLAIM OF LIEN FOR ASSESSMENTS |
| **REFERENCE NUMBER(S) OF DOCUMENTS ASSIGNED OR RELEASED:** |
| Additional reference numbers are on page ____ of document. |
| **GRANTOR(S):** |
| 1. Rebekah L. Green |
| Additional names on page ____ of document. |
| **GRANTEE(S):** |
| 1. Bokara By the Lake Condominium Association |
| Additional names on page ____ of document. |
| **LEGAL DESCRIPTION:** (abbreviated i.e. lot, block, plat, section, township, and range) LOT 137, BUILDING G, BOKARA BY THE LAKE, A CONDO, VOL. 201, PGS. 39-52 |
| Full legal description is on page ____ of document. |
| **ASSESSOR'S PROPERTY TAX PARCEL/ACCOUNT NUMBER:** |
| 090300-0870 |
| The Auditor/Recorder will rely on information provided on the form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein. |

## NOTICE OF CLAIM OF LIEN FOR ASSESSMENTS

NOTICE is hereby given that the above-named Grantee/Claimant, whose address for purposes of notice is C/O David M. Tall, Oseran, Hahn, Spring, Straight & Watts, P.S., 10900 Northeast Fourth St., Suite 850, Bellevue, WA 98004, claims a lien for delinquent assessments on the real property described below in the following amounts as of the date stated below:

LOT 137, BUILDING G, BOKARA BY THE LAKE, A
CONDOMINIUM, SURVEY MAP AND PLANS RECORDED

F:\DMT\Condo\Merge Forms\New demand\post-90 lien.doc 03/10/09 (S)



Ex A
ORIGINAL

IN VOLUME 201 OF CONDOMINIUMS, PAGES 39
THROUGH 52, AND ANY AMENDMENTS THERETO;
CONDOMINIUM DECLARATION RECORDED UNDER
RECORDING NUMBER 20041109000479, AND ANY
AMENDMENTS THERETO, IN KING COUNTY
WASHINGTON.

Past due assessments, late fees and attorneys fees $2,304.27.

plus all additional assessments, costs, interest and attorney's fees which accrue prior to payment and release hereof. The owner of the real property subject hereto is believed to be Rebekah L. Green. **This lien arises pursuant to RCW 64.34** and the provisions of the above-referenced Declaration.

DATED: March 10, 2009.

            OSERAN, HAHN, SPRING, STRAIGHT &
            WATTS, P.S.

            _____
            DAVID M. TALL, WSBA #12849
            Attorney for Claimant

STATE OF WASHINGTON   )
                ) §
COUNTY OF KING      )

I certify that I know or have satisfactory evidence that DAVID M. TALL is the person acknowledged that he signed this instrument on oath stated that he was authorized to execute the instrument and acknowledged it as the attorney for the Grantee/Claimant identified above to be his free and voluntary act of such party for the uses and purposes mentioned in the instrument.

DATED: March 10, 2009.

            _____
            Print Name: Melinda Nordby
            NOTARY PUBLIC in and for the state of
            Washington residing in Snohomish
            My appointment expires: 10/19/09.

F:\DMT\Condo\Merge Forms\New demand\post-90 lien.doc 03/10/09 (S)

# Kappes Miller Management

## OCCUPANT LEDGER

| | | |
|---|---|---|
| Unit Reference Number : 150-G137 | Occupant Type : CURRENT | |
| Property Name : Bokara By The Lake | Tenant Id : 11864004160 | |
| Name : Green, Rebekah L. | Work Number : | Home Number : |
| Name : | Work Number : | Home Number : |
| Address : 801 Rainier Ave. N, #G137 | Cell Number : | Fax Number : |
| City, State, Zip : Renton, WA 98055 | | Unit Number : G137 |
| Email Address : | | |

### Chronological History

| Date | Charge Code | Charge Description | Amount | Balance |
|---|---|---|---|---|
| 10/01/2005 | AST | Homeowner Assessment | 125.00 | 125.00 |
| 10/06/2005 | ICC | Pymt. Batch 213 Check 05044699 | -250.00 | -125.00 |
| 10/06/2005 | ICC | Initial Working Capital | 250.00 | 125.00 |
| 11/01/2005 | AST | Homeowner Assessment | 125.00 | 250.00 |
| 12/01/2005 | AST | Homeowner Assessment | 125.00 | 375.00 |
| 01/01/2006 | AST | Homeowner Assessment | 125.00 | 500.00 |
| 01/24/2006 | DLF | Delinquent Letter Fee | 13.50 | 513.50 |
| 01/24/2006 | LAT | Late Fee | 20.00 | 533.50 |
| 02/01/2006 | AST | Homeowner Assessment | 125.00 | 658.50 |
| 02/21/2006 | CLF | Certified Letter Fee | 27.50 | 686.00 |
| 02/21/2006 | DLF | Delinquent Letter Fee | 13.50 | 699.50 |
| 02/21/2006 | LAT | Late Fee | 20.00 | 719.50 |
| 03/01/2006 | AST | Homeowner Assessment | 125.00 | 844.50 |
| 03/14/2006 | CLF | Certified Letter Fee | 27.50 | 872.00 |
| 03/14/2006 | DLF | Delinquent Letter Fee | 13.50 | 885.50 |
| 03/14/2006 | LAT | Late Fee | 20.00 | 905.50 |
| 04/01/2006 | AST | Homeowner Assessment | 125.00 | 1,030.50 |
| 04/04/2006 | AST | Pymt. Batch 650 Check 3269 | -719.50 | 311.00 |
| 04/11/2006 | CLF | Certified Letter Fee | 27.50 | 338.50 |
| 04/11/2006 | DLF | Delinquent Letter Fee | 13.50 | 352.00 |
| 04/11/2006 | LAT | Late Fee | 20.00 | 372.00 |
| 04/20/2006 | AST | Pymt. Batch 913 Check 003274 | -125.00 | 247.00 |
| 05/01/2006 | AST | Homeowner Assessment | 125.00 | 372.00 |
| 05/11/2006 | CLF | Certified Letter Fee | 27.50 | 399.50 |
| 05/11/2006 | DLF | Delinquent Letter Fee | 13.50 | 413.00 |
| 05/11/2006 | LAT | Late Fee | 20.00 | 433.00 |
| 06/01/2006 | AST | Homeowner Assessment | 125.00 | 558.00 |
| 06/01/2006 | AST | Pymt. Batch 594 Check 003289 | -283.50 | 274.50 |
| 06/14/2006 | CLF | Certified Letter Fee | 27.50 | 302.00 |
| 06/14/2006 | DLF | Delinquent Letter Fee | 13.50 | 315.50 |
| 06/14/2006 | LAT | Late Fee | 20.00 | 335.50 |
| 07/01/2006 | AST | Homeowner Assessment | 125.00 | 460.50 |
| 07/20/2006 | HDF | KMM Handling Fee | 55.00 | 515.50 |
| 07/20/2006 | LEG | Legal Expense- initiate Coll | 160.00 | 675.50 |
| 07/25/2006 | LAT | Late Fee | 20.00 | 695.50 |
| 07/25/2006 | LEG | Remove LEG Fee | -160.00 | 535.50 |
| 07/25/2006 | LEG | Legal Expense | 234.00 | 769.50 |
| 08/01/2006 | AST | Homeowner Assessment | 125.00 | 894.50 |
| 08/15/2006 | LAT | Late Fee | 20.00 | 914.50 |



Ex B

12/6/2010  
User: JULIANNA  

Kappes Miller Management  

**OCCUPANT LEDGER**

5:08:27PM  
Page 2 of 5

Unit Reference Number : 150-G137                    Occupant Type : CURRENT

**Chronological History**

| Date | Charge Code | Charge Description | Amount | Balance |
|---|---|---|---:|---:|
| 09/01/2006 | AST | Homeowner Assessment | 125.00 | 1,039.50 |
| 09/12/2006 | LAT | Late Fee | 20.00 | 1,059.50 |
| 09/25/2006 | AST | Pymt. Batch 080 Check 003315 | -475.50 | 584.00 |
| 10/01/2006 | AST | Homeowner Assessment | 125.00 | 709.00 |
| 10/05/2006 | LEG | Legal Expense- Sept. | 94.00 | 803.00 |
| 10/06/2006 | HDF | Pymt. Batch 226 Check 00995012 | -125.00 | 678.00 |
| 10/17/2006 | LAT | Late Fee | 20.00 | 698.00 |
| 11/01/2006 | AST | Homeowner Assessment | 125.00 | 823.00 |
| 11/13/2006 | LEG | Pymt. Batch 163 Check 995019 | -125.00 | 698.00 |
| 11/16/2006 | LAT | Late Fee | 20.00 | 718.00 |
| 12/01/2006 | AST | Homeowner Assessment | 125.00 | 843.00 |
| 12/05/2006 | AST | Pymt. Batch 576 Check 995028 | -125.00 | 718.00 |
| 01/01/2007 | AST | Homeowner Assessment | 136.23 | 854.23 |
| 01/02/2007 | AST | Pymt. Batch 998 Check 995036 | -125.00 | 729.23 |
| 01/18/2007 | LAT | Late Fee | 20.00 | 749.23 |
| 01/22/2007 | AST | Pymt. Batch 397 Check 995045 | -12.00 | 737.23 |
| 02/01/2007 | AST | Homeowner Assessment | 136.23 | 873.46 |
| 02/20/2007 | LAT | Late Fee | 20.00 | 893.46 |
| 03/01/2007 | AST | Homeowner Assessment | 136.23 | 1,029.69 |
| 03/01/2007 | LEG | Legal Expense- FEB | 1,020.14 | 2,049.83 |
| 03/14/2007 | AST | Pymt. Batch 452 Check 995048 | -305.96 | 1,743.87 |
| 03/20/2007 | LAT | Late Fee | 20.00 | 1,763.87 |
| 03/28/2007 | LEG | Legal Expense- Mar. | 148.30 | 1,912.17 |
| 04/01/2007 | AST | Homeowner Assessment | 136.23 | 2,048.40 |
| 04/05/2007 | AST | Pymt. Batch 898 Check 995055 | -136.23 | 1,912.17 |
| 04/17/2007 | LAT | Late Fee | 20.00 | 1,932.17 |
| 05/01/2007 | AST | Homeowner Assessment | 136.23 | 2,068.40 |
| 05/04/2007 | LEG | Legal Expense- APRIL | 286.05 | 2,354.45 |
| 05/08/2007 | AST | Pymt. Batch 564 Check 995064 | -137.00 | 2,217.45 |
| 05/15/2007 | LAT | Late Fee | 20.00 | 2,237.45 |
| 06/01/2007 | AST | Homeowner Assessment | 136.23 | 2,373.68 |
| 07/01/2007 | AST | Homeowner Assessment | 136.23 | 2,509.91 |
| 07/12/2007 | LEG | Legal Expense- JUNE | 607.50 | 3,117.41 |
| 07/23/2007 | LAT | Late Fee | 15.00 | 3,132.41 |
| 07/23/2007 | LAT | Late Fee Interest | 31.17 | 3,163.58 |
| 08/01/2007 | AST | Homeowner Assessment | 136.23 | 3,299.81 |
| 08/01/2007 | LEG | Legal Expense- JULY | 187.00 | 3,486.81 |
| 08/06/2007 | LEG | Legal Expense | 607.50 | 4,094.31 |
| 08/09/2007 | AST | Pymt. Batch 053 Check 3350 | -347.00 | 3,747.31 |
| 08/09/2007 | AST | Pymt. Batch 053 Check 995074 | -137.00 | 3,610.31 |
| 08/14/2007 | LAT | Late Fee | 20.00 | 3,630.31 |
| 08/21/2007 | LEG | Remove Legal Expense | -607.50 | 3,022.81 |
| 08/22/2007 | HDF | KMM Handling Fee | 55.00 | 3,077.81 |
| 08/22/2007 | HDF | Billing Adjustment | -55.00 | 3,022.81 |
| 08/22/2007 | LEG | Legal Expense | 242.00 | 3,264.81 |

12/6/2010  
User: JULIANNA

Kappes Miller Management

5:08:27PM  
Page 3 of 5

**OCCUPANT LEDGER**

Unit Reference Number : 150-G137                    Occupant Type : CURRENT

**Chronological History**

| Date | Charge Code | Charge Description | Amount | Balance |
|---|---|---|---:|---:|
| 08/22/2007 | LEG | Billing Adjustment | -242.00 | 3,022.81 |
| 08/30/2007 | LEG | Legal Expense- AUG | 715.10 | 3,737.91 |
| 09/01/2007 | AST | Homeowner Assessment | 136.23 | 3,874.14 |
| 09/06/2007 | LEG | Pymt. Batch 467 Check 995081 | -137.00 | 3,737.14 |
| 09/13/2007 | LAT | Late Fee | 20.00 | 3,757.14 |
| 09/17/2007 | LEG | Legal Expense- ROL | 269.00 | 4,026.14 |
| 09/20/2007 | AST | Pymt. Batch 736 Check 938791 | -4,143.14 | -117.00 |
| 10/01/2007 | AST | Homeowner Assessment | 136.23 | 19.23 |
| 10/03/2007 | AST | Pymt. Batch 867 Check 995082 | -137.00 | -117.77 |
| 11/01/2007 | AST | Homeowner Assessment | 136.23 | 18.46 |
| 11/01/2007 | AST | Pymt. Batch 348 Check 995092 | -137.00 | -118.54 |
| 12/01/2007 | AST | Homeowner Assessment | 136.23 | 17.69 |
| 12/04/2007 | LEG | Pymt. Batch 864 Check 995101 | -137.00 | -119.31 |
| 01/01/2008 | AST | Homeowner Assessment | 173.84 | 54.53 |
| 01/07/2008 | AST | Pymt. Batch 321 Check 995112 | -137.00 | -82.47 |
| 01/11/2008 | AST | Pymt. Batch 427 Check 995117 | -33.00 | -115.47 |
| 02/01/2008 | AST | Homeowner Assessment | 173.84 | 58.37 |
| 02/13/2008 | AST | Pymt. Batch 934 Check 995127 | -170.00 | -111.63 |
| 03/01/2008 | AST | Homeowner Assessment | 173.84 | 62.21 |
| 03/19/2008 | AST | Pymt. Batch 796 Check 995141 | -184.00 | -121.79 |
| 04/01/2008 | AST | Homeowner Assessment | 173.84 | 52.05 |
| 04/08/2008 | AST | Pymt. Batch 416 Check 995149 | -174.00 | -121.95 |
| 05/01/2008 | AST | Homeowner Assessment | 173.84 | 51.89 |
| 05/15/2008 | AST | Pymt. Batch 371 Check 995157 | -174.00 | -122.11 |
| 06/01/2008 | AST | Homeowner Assessment | 173.84 | 51.73 |
| 06/06/2008 | AST | Pymt. Batch 821 Check 995166 | -174.00 | -122.27 |
| 07/01/2008 | AST | Homeowner Assessment | 173.84 | 51.57 |
| 07/21/2008 | AST | Pymt. Batch 576 Check 995177 | -174.00 | -122.43 |
| 08/01/2008 | AST | Homeowner Assessment | 173.84 | 51.41 |
| 09/01/2008 | AST | Homeowner Assessment | 173.84 | 225.25 |
| 09/16/2008 | DLF | Delinquent Letter Fee | 13.50 | 238.75 |
| 09/16/2008 | LAT | Late Fee | 20.00 | 258.75 |
| 10/01/2008 | AST | Homeowner Assessment | 173.84 | 432.59 |
| 10/14/2008 | CLF | Certified Letter Fee | 27.50 | 460.09 |
| 10/14/2008 | DLF | Delinquent Letter Fee | 13.50 | 473.59 |
| 10/14/2008 | LAT | Late Fee | 20.00 | 493.59 |
| 11/01/2008 | AST | Homeowner Assessment | 173.84 | 667.43 |
| 12/01/2008 | AST | Homeowner Assessment | 173.84 | 841.27 |
| 12/16/2008 | CLF | Certified Letter Fee | 27.50 | 868.77 |
| 12/16/2008 | DLF | Delinquent Letter Fee | 13.50 | 882.27 |
| 12/16/2008 | LAT | Late Fee | 20.00 | 902.27 |
| 01/01/2009 | AST | Homeowner Assessment | 213.18 | 1,115.45 |
| 01/07/2009 | AST | Pymt. Batch 720 Check 995191 | -174.00 | 941.45 |
| 01/20/2009 | CLF | Certified Letter Fee | 27.50 | 968.95 |
| 01/20/2009 | DLF | Delinquent Letter Fee | 13.50 | 982.45 |

12/6/2010
User:   JULIANNA

Kappes Miller Management

OCCUPANT LEDGER

5:08:27PM
Page 4 of 5

Unit Reference Number  :   150-G137              Occupant Type  :   CURRENT

**Chronological History**

| Date | Charge Code | Charge Description | Amount | Balance |
|---|---|---|---:|---:|
| 01/20/2009 | LAT | Late Fee | 20.00 | 1,002.45 |
| 02/01/2009 | AST | Homeowner Assessment | 213.18 | 1,215.63 |
| 02/27/2009 | HDF | KMM Handling Fee | 55.00 | 1,270.63 |
| 02/27/2009 | LEG | Legal Expense | 244.00 | 1,514.63 |
| 03/01/2009 | AST | Homeowner Assessment | 213.18 | 1,727.81 |
| 03/18/2009 | LAT | Late Fee | 20.00 | 1,747.81 |
| 03/26/2009 | AST | Pymt. Batch 150 Check 995201 | -213.18 | 1,534.63 |
| 04/01/2009 | AST | Homeowner Assessment | 213.18 | 1,747.81 |
| 04/20/2009 | LAT | Late Fee | 20.00 | 1,767.81 |
| 04/21/2009 | AST | Pymt. Batch 037 Check 995208 | -213.18 | 1,554.63 |
| 05/01/2009 | AST | Homeowner Assessment | 213.18 | 1,767.81 |
| 05/08/2009 | LEG | Legal Expense April | 94.00 | 1,861.81 |
| 05/15/2009 | LAT | Late Fee | 20.00 | 1,881.81 |
| 06/01/2009 | AST | Homeowner Assessment | 213.18 | 2,094.99 |
| 06/22/2009 | LAT | Late Fee | 20.00 | 2,114.99 |
| 07/01/2009 | AST | Homeowner Assessment | 213.18 | 2,328.17 |
| 07/01/2009 | AST | Pymt. Batch 177 Check 995218 | -213.18 | 2,114.99 |
| 07/16/2009 | LAT | Late Fee | 20.00 | 2,134.99 |
| 07/27/2009 | AST | Pymt. Batch 903 Check 995223 | -62.00 | 2,072.99 |
| 08/01/2009 | AST | Homeowner Assessment | 213.18 | 2,286.17 |
| 08/03/2009 | LEG | Legal Expense July | 1,113.74 | 3,399.91 |
| 08/12/2009 | LEG | Legal Expense July | 1,113.74 | 4,513.65 |
| 08/14/2009 | LAT | Late Fee | 20.00 | 4,533.65 |
| 08/31/2009 | LEG | Billing Adjustments | -1,113.74 | 3,419.91 |
| 09/01/2009 | AST | Homeowner Assessment | 213.18 | 3,633.09 |
| 09/03/2009 | LEG | Legal Expense August | 220.00 | 3,853.09 |
| 09/22/2009 | LAT | Late Fee | 20.00 | 3,873.09 |
| 09/28/2009 | AST | Pymt. Batch 060 Check 3489 | -246.68 | 3,626.41 |
| 10/01/2009 | AST | Homeowner Assessment | 213.18 | 3,839.59 |
| 10/08/2009 | LEG | Legal Expense September | 480.00 | 4,319.59 |
| 10/12/2009 | AST | Pymt. Batch 636 Check 579832 | -1,279.08 | 3,040.51 |
| 10/15/2009 | LAT | Pymt. Batch 813 Check 995228 | -62.94 | 2,977.57 |
| 10/19/2009 | LAT | Late Fee | 20.00 | 2,997.57 |
| 11/01/2009 | AST | Homeowner Assessment | 213.18 | 3,210.75 |
| 11/02/2009 | LEG | Legal Expense October | 23.50 | 3,234.25 |
| 11/13/2009 | LAT | Late Fee | 20.00 | 3,254.25 |
| 12/01/2009 | AST | Homeowner Assessment | 213.18 | 3,467.43 |
| 12/03/2009 | LEG | Legal Expense November | 32.49 | 3,499.92 |
| 12/15/2009 | LAT | Late Fee | 20.00 | 3,519.92 |
| 01/01/2010 | AST | Homeowner Assessment | 225.00 | 3,744.92 |
| 01/04/2010 | LEG | Legal Expense December | 58.75 | 3,803.67 |
| 01/05/2010 | AST | Pymt. Batch 440 Check 3615 | -426.36 | 3,377.31 |
| 01/15/2010 | LAT | Late Fee | 20.00 | 3,397.31 |
| 02/01/2010 | AST | Homeowner Assessment | 225.00 | 3,622.31 |
| 02/11/2010 | LAT | Late Fee | 20.00 | 3,642.31 |

## OCCUPANT LEDGER

Unit Reference Number : 150-G137          Occupant Type : CURRENT

### Chronological History

| Date | Charge Code | Charge Description | Amount | Balance |
|---|---|---|---:|---:|
| 03/01/2010 | AST | Homeowner Assessment | 225.00 | 3,867.31 |
| 03/16/2010 | LAT | Late Fee | 20.00 | 3,887.31 |
| 03/23/2010 | AST | Pymt. Batch 593 Check 3628 | -675.00 | 3,212.31 |
| 04/01/2010 | AST | Homeowner Assessment | 225.00 | 3,437.31 |
| 04/19/2010 | LAT | Late Fee | 20.00 | 3,457.31 |
| 05/01/2010 | AST | Homeowner Assessment | 225.00 | 3,682.31 |
| 05/14/2010 | LAT | Late Fee | 20.00 | 3,702.31 |
| 05/14/2010 | LEG | Legal Expense April | 50.00 | 3,752.31 |
| 06/01/2010 | AST | Homeowner Assessment | 225.00 | 3,977.31 |
| 06/16/2010 | LAT | Late Fee | 20.00 | 3,997.31 |
| 06/29/2010 | LEG | Pymt. Batch 200 Check 3648 | -500.00 | 3,497.31 |
| 07/01/2010 | AST | Homeowner Assessment | 225.00 | 3,722.31 |
| 07/02/2010 | LEG | Legal Expense | 466.50 | 4,188.81 |
| 07/13/2010 | AST | Transfer from SPA | 677.54 | 4,866.35 |
| 07/16/2010 | LAT | Late Fee | 20.00 | 4,886.35 |
| 08/01/2010 | AST | Homeowner Assessment | 225.00 | 5,111.35 |
| 08/17/2010 | LAT | Late Fee | 20.00 | 5,131.35 |
| 08/31/2010 | AST | Pymt. Batch 890 Check 3665 | -500.00 | 4,631.35 |
| 09/01/2010 | AST | Homeowner Assessment | 225.00 | 4,856.35 |
| 09/03/2010 | LEG | Legal Expense | 407.74 | 5,264.09 |
| 09/17/2010 | LAT | Late Fee | 20.00 | 5,284.09 |
| 09/30/2010 | AST | Pymt. Batch 292 Check 3674 | -258.50 | 5,025.59 |
| 10/01/2010 | AST | Homeowner Assessment | 225.00 | 5,250.59 |
| 10/21/2010 | LAT | Late Fee | 20.00 | 5,270.59 |
| 11/01/2010 | AST | Homeowner Assessment | 225.00 | 5,495.59 |
| 11/02/2010 | LEG | Refund Legal Expense | -24.00 | 5,471.59 |
| 11/18/2010 | LAT | Late Fee | 20.00 | 5,491.59 |
| 12/01/2010 | AST | Homeowner Assessment | 225.00 | 5,716.59 |

CONDOMINIUM

DECLARATION

FOR

BOKARA BY THE LAKE

A CONDOMINIUM

Ex C

without the consent of Eligible Mortgagees of Units to which at least 51% of the votes of Units subject to Mortgages held by Eligible Mortgagees are allocated. Any contract with a Managing Agent shall have a term no longer than one year (but may be renewable by agreement of the parties for successive one-year periods) and shall be terminable by the Board without payment of a termination fee, either (1) for cause, on 30 days' written notice, or (2) without cause, on not more than 90 days' written notice.

Section 14.4  Limitations on Board Authority.  The Board shall not act on behalf of the Association to amend the Declaration in any manner that requires the vote or approval of the Unit Owners pursuant to Article 25, to terminate the Condominium pursuant to Article 26, or to elect members of the Board or determine the qualifications, powers, and duties, or terms of office of members of the Board. The Board may, in accordance with the Bylaws, fill vacancies in its membership for the unexpired portion of any term.

Section 14.5  Right to Notice and Opportunity to Be Heard.  Whenever this Declaration requires that an action of the Board be taken after "Notice and Opportunity to be Heard," the following procedure shall be observed: The Board shall give written notice of the proposed action to all Owners, tenants, or occupants of Units whose interest would be significantly affected by the proposed action. The notice shall include a general statement of the proposed action and the date, time, and place of the hearing, which shall be not less than five days from the date notice is delivered by the Board. At the hearing, the affected person shall have the right, personally or by a representative, to give testimony orally, in writing or both (as specified in the notice), subject to reasonable rules of procedure established by the Board to assure a prompt and orderly resolution of the issues. Such evidence shall be considered in making the decision but shall not bind the Board. The affected person shall be notified of the decision in the same manner in which notice of the meeting was given.

Article 15. BUDGET AND ASSESSMENTS.

Section 15.1  Fiscal Year.  The fiscal year of the Association will be the calendar year.

Section 15.2  Preparation of Budget.  Not less than 30 days before the end of the fiscal year the Board shall prepare a budget for the Association for the coming year. In preparing its budget the Board shall estimate the Common Expenses and Specially Allocated Expenses of the Association to be paid during the year, make suitable provision for accumulation of reserves, including amounts reasonably anticipated to be required for the operation, maintenance, repair, and replacement of the Common Elements and the Limited Common Elements, and shall take into account any surplus or deficit carried over from the preceding year and any expected income to the Association. The Declarant shall prepare the initial budget for the first fiscal year of the Association.

-19-

Section 15.3  Ratification of Budget.  Within 30 days after adoption of any proposed budget for the Condominium after the Transition Date, the Board shall provide a summary of the budget to all the Owners and shall set a date for a meeting of the Owners to consider ratification of the budget not less than 14 nor more than 60 days after mailing of the summary. Unless at that meeting the Owners to which a majority of the votes in the Association are allocated reject the budget, the budget is ratified, whether or not a quorum is present. In the event the proposed budget is rejected or the required notice is not given, the periodic budget last ratified by the Unit Owners shall be continued until such time as the Unit Owners ratify a subsequent budget proposed by the Board.

Section 15.4  Supplemental Budget.  If during the year the budget proves to be inadequate for any reason, including nonpayment of any Owner's Assessments, the Board may prepare a supplemental budget for the remainder of the year. A supplemental budget that results in an increase in an Owner's Assessments shall be ratified pursuant to Section 15.3.

Section 15.5  Assessments for Common Expenses.  The amounts required by the Association for Common Expenses and Specially Allocated Expenses as reflected by the annual budget and any supplemental budgets shall be divided into installments to be paid each month over the period of time covered by the budget or supplemental budget. The monthly Assessment for each Unit is the total of (a) the Common Expense Liability of that Unit times the total monthly installment for Common Expenses for all Units; (b) any Specially Allocated Expenses for the Unit. Monthly Assessments begin accruing for all Units upon the closing of the sale of the first Unit by the Declarant; provided that the Declarant may delay the commencement of Assessments for Common Expenses and pay all actual Common Expenses (but no allocations to reserves). Until commencement of Assessments, the Declarant may allocate utility costs paid by the Association only to those Units which have been conveyed or are occupied.

Section 15.6  Specially Allocated Expenses for Certain Utilities.  The cost of water and sewer service to the Units shall be specially allocated to the Units based on water usage as determined by submeters maintained by the Association or its agent. The Association may require Owners to make monthly payments based on estimated or assumed usage provided that each Owner's water and sewer utility account is reconciled to actual usage at least annually and may require Owners to make and maintain security deposits for payment of such utilities.

Section 15.7  Contribution to Initial Working Capital.  In connection with the closing of the sale of each Unit, the first purchaser thereof shall pay to the Association, as a nonrefundable contribution to an initial working capital fund, an amount equal to two times the initial monthly Assessment against the Unit, which amount shall not be considered as an advance payment of regular Assessments. On the Transition Date, the Declarant shall make such contribution for any Units remaining unsold on that date and shall be entitled to be reimbursed the amount so paid as each such Unit is conveyed. The Declarant shall not use

-20-

any of the working capital fund to defray any of its expenses, reserve contributions, or construction costs or to make up any budget deficits prior to the Transition Date. After the Transition Date, the Board may transfer all or any portion of the initial working capital fund to reserves.

Section 15.8  Special Assessments.  For those Common Expenses which cannot reasonably be calculated and paid on a monthly basis, the Board may levy special Assessments for such expenses against the Units, subject to ratification by the Owners pursuant to Section 15.3.  To the extent that any Common Expense is caused by the misconduct of an Owner or tenant of any Unit, the Association may, after Notice and Opportunity to be Heard, levy a special assessment for the expense against the Unit.

Section 15.9  Creation of Reserves; Assessments.  The Board shall create reserve accounts for anticipated expenses for repairs, replacements, and improvements which will occur in the future in order to accumulate sufficient funds to pay such expenses when they occur.  The operation of reserve accounts and Assessments for reserve accounts shall be further governed by the Bylaws.

Section 15.10  Notice of Assessments.  The Board shall notify each Owner in writing of the amount of the monthly general and special Assessments to be paid for the Owner's Unit and shall furnish copies of all budgets and the Common Expense Liability allocations which apply to the Unit, on which the general and special Assessments are based.  The Board shall furnish the same information to an Owner's mortgagee if so requested.

Section 15.11  Payment of Monthly Assessments.  On or before the first day of each calendar month each Owner shall pay or cause to be paid to the treasurer or designated agent of the Association all Assessments against the Unit for that month.  Any Assessment not paid by the tenth day of the calendar month for which it is due shall be delinquent and subject to late charges, interest charges, and collection procedures as provided in Article 16.

Section 15.12  Proceeds Belong to Association.  All Assessments and other receipts received by the Association on behalf of the Condominium shall belong to the Association.

Section 15.13  Failure to Assess.  Any failure by the Board or the Association to make the budgets and Assessments hereunder before the expiration of any year for the ensuing year shall not be deemed a waiver or modification in any respect of the provisions of this Declaration, or a release of the Owners from the obligation to pay Assessments during that or any subsequent year.  The monthly Assessments amounts established for the preceding year shall continue until new Assessments are established.

Section 15.14  Reconciliation of Assessments to Actual Income and Expenses.  The Association shall establish and maintain its accounts and records in such a manner that will enable it to credit Assessments for Common Expenses and Specially Allocated Expenses,

-21-

09/08/04 9:38 AM
50454347.01

including allocations to reserves, and income to the Association to the account of the appropriate Units and make its expenditures from the appropriate accounts. In order that the Unit Owners are correctly assessed for the actual expenses of the Association, the accounts of the Association shall be reconciled at least annually, unless the Board determines that a reconciliation would not result in a material savings to any Unit Owner; and any surpluses (or deficits) in the accounts shall be credited to the benefit of or paid to (or charged to the account of or assessed against) the Owners of the Units who paid the surplus (or owe the deficit).

Section 15.15 Certificate of Unpaid Assessments. Upon the request of any Owner or Mortgagee of a Unit, the Board will furnish a certificate stating the amount, if any, of unpaid Assessments charged to the Unit. The certificate shall be conclusive upon the Board and the Association as to the amount of such indebtedness on the date of the certificate in favor of all purchasers and mortgagees of the Unit who rely on the certificate in good faith. The Board may establish a reasonable fee to be charged to reimburse it for the cost of preparing the certificate.

Section 15.16 Recalculation of Assessments. If Common Expense Liabilities are reallocated, Common Expense Assessments, special Assessments, and any installment thereof not yet due shall be recalculated in accordance with the reallocated liabilities.

Article 16. LIEN AND COLLECTION OF ASSESSMENTS.

Section 16.1 Assessments Are a Lien; Priority. The Association has a lien on a Unit for any unpaid Assessment levied against a Unit from the time the Assessment is due. A lien under this Article shall be prior to all other liens and encumbrances on a Unit except: (a) liens and encumbrances recorded before the recording of this Declaration; (b) a mortgage on the Unit recorded before the date on which the Assessment sought to be enforced became delinquent, EXCEPT to the extent of Assessments for Common Expenses, excluding any amounts for capital improvements, based on the periodic budgets adopted by the Association pursuant to Article 15 which would have become due during the six months immediately preceding the date of a sheriff's sale in an action for judicial foreclosure by either the Association or a mortgagee, the date of a trustee's sale in a nonjudicial foreclosure of a mortgage, or the date of recording of the declaration of forfeiture in a proceeding by the vendor under a real estate contract, PROVIDED that the priority of the Association's lien against Units encumbered by a mortgage held by an Eligible Mortgagee or by a mortgagee which has given the Association a written request for a notice of delinquent Assessments shall be reduced by up to three months if and to the extent that such lien priority includes any delinquencies which relate to a period after such mortgagee becomes an Eligible Mortgagee or has given such notice and before the Association gives such mortgagee a written notice of the delinquency; and (c) liens for real property taxes and other governmental assessments or charges against the Unit. Recording of this Declaration constitutes record notice and perfection of the lien for Assessments; however, the Association may record a notice of claim

-22-

09/08/04 9:38 AM
50454347.01